United States District Court
Southern District of Texas
**ENTERED**
October 03, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STACEY LEWIS, § § § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-23-1446 |
| § | |
| CIRCLE K STORES, INC, § § | |
| Defendant. § § § | |

**MEMORANDUM AND ORDER**

The plaintiff, Stacey Lewis, alleges that the defendant, Circle K Stores, Inc., terminated her employment and discriminated against her based on her race and sex. (Docket Entry No. 4). Circle K moves to compel arbitration under an agreement that Lewis allegedly signed when she was hired at Circle K. (Docket Entry No. 12). Lewis denies that she received or signed an arbitration agreement. Based on the pleadings, the motion and response, and the applicable law, the court grants the motion to compel arbitration and dismisses this case in favor of arbitration. The reasons are set out below.

**I.      Legal Standards**

   **A.      Federal Arbitration Act**

Section 3 of the Federal Arbitration Act, 9 U.S.C. 1 *et seq.*, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The first step in ruling on a motion to compel arbitration is to determine "whether the parties agreed to arbitrate the dispute in question." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (per curiam). This involves consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 293 (5th Cir. 2005). "In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). A court may not compel arbitration until it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." § 4.

Once the court is satisfied that the parties agreed to arbitrate the dispute in question, it considers "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer*, 422 F.3d at 294 (quoting *Webb*, 89 F.3d at 258). The court moves on to this second step "[o]nly if [it] finds there is an agreement to arbitrate." *Edwards v. Conn Appliances, Inc.*, 2015 WL 1893107, at *2 (N.D. Tex. Apr. 24, 2015) (citing *Webb*, 89 F.3d at 258).

"The quantum of evidence required to prove or disprove the existence of an agreement to arbitrate is not entirely clear in this Circuit." *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (citing *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)). The party resisting arbitration "must produce at least some evidence to substantiate his factual allegations." *Id.* at 357–58. "To put the making of the arbitration agreement in issue, a party is required to unequivocally deny that he agreed to arbitrate and produce some evidence supporting his position.'" *Id.* (quoting *Chester v. DirecTV, LLC*, 607 F. App'x 362, 363–64 (5th

Cir. 2015) (per curiam) (alterations adopted and quotation marks omitted)). Evidence supporting or opposing a motion to compel arbitration must comply with the Federal Rules of Evidence and be based on personal knowledge. *Domain Vault LLC v. Rightside Group Ltd.*, 2018 WL 638013, at *3 (N.D. Tex. Jan. 30, 2018).

### B.  Texas Contract Law

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting reference omitted). Electronic contracts and "clickwrap" agreements are valid in Texas. *Bongalis-Royer v. R.J. Worldwide, LLC*, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015); *Fieldtech Avionics & Instrs., Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 818 n.1 (Tex. App.—Fort Worth 2008, no pet.). Electronic contracts can be sent, accepted, signed, and returned electronically; a clickwrap agreement generally requires the user to assent to the terms of a contract by clicking an "accept" button on the website to complete the transaction. *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 905 n.15 (N.D. Tex. 2000).

In Texas, the doctrine of unconscionability involves two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). The burden of proving unconscionability is with the party seeking to invalidate the arbitration agreement. *Id.* at 572.

**II.     Analysis**

Circle K has produced the following evidence that Lewis entered an arbitration agreement as part of the "onboarding" process when she was hired: (1) the declaration of Dana Shockey, Circle K's Human Resources Manager; (2) Lewis's personnel file; and (3) the arbitration agreement. Shockey states that:

> As part of the onboarding process at the beginning of Plaintiff's employment on November 29, 2021, among other documents, Defendant provided Plaintiff with an electronic copy of a Mutual Agreement to Arbitrate for her review and signature ("Arbitration Agreement"), as it did with all other employees. . . .
>
> Plaintiff reviewed and signed the Arbitration Agreement electronically via her electronic signature on November 29, 2021, as reflected in Plaintiff's personnel file on page 13. Defendant, through its Vice President of HR, NA & Global Performance and Reward Mark Novak, also signed and agreed to the Arbitration Agreement as reflected in Exhibit 3.

(Docket Entry No. 12-1 at ¶¶ 4–5).

Lewis's personnel file reflects that, on November 29, 2021, at 15:16:48, she electronically signed a document titled "Arbitration," with the attachment titled "Circle K-Arbitration Agreement (Final09_04_2018).docx." (Docket Entry No. 12-2 at 14). Next to that entry in Lewis's personnel file is a "signature statement," which reads: "I have read and understand the policy." (*Id.*).

The arbitration agreement itself is titled "Mutual Agreement to Arbitrate." (Docket Entry No. 12-3 at 2). It provides, in relevant part:

> **1. Binding Arbitration of Covered Claims**
>
> Both Employee and Employer agree to resolve any claim or dispute covered by this Agreement through binding arbitration rather than through court litigation. Both Employer and Employee further agree that binding arbitration pursuant to this Agreement shall be the sole and exclusive remedy for resolving any covered claims or disputes.
>
> **2. Claims Covered by This Agreement**
>
> **a. Covered Claims.** Claims and disputes covered by this Agreement include all claims by Employee against Employer (as defined below) and all claims that Employer may have against Employee, including, without limitation, any claims

>> arising from or relating to employment with Employer or relating to the terms and conditions of employment, job assignments, wages, benefits or other forms of compensation and/or separation from employment. Covered claims specifically include claims arising from or relating to:
>
>> > i. Any federal, state, or local laws, regulations, or statutes prohibiting employment discrimination (such as on the basis of race, sex, national origin, age, disability, or religion), retaliation and harassment, including but not limited to, claims arising under Title VII of the Civil Rights Act of 1964, as amended (Title VII), the Age Discrimination Employment Act (ADEA), the Americans with Disabilities Act (ADA), the Equal Pay Act (EPA), 42 U.S.C. §1981, the Family and Medical Leave Act (FMLA), the Pregnancy Discrimination Act (PDA), and any other similar state or local statutes or regulations
>>
>> > …
>>
>> > iv. Any alleged violation of public policy, alleged wrongful termination, or any challenge to the at-will status of the Employee.
>>
>> > viii. Any other claim for personal, emotional, physical, psychological, or other economic injury, including, but not limited to, negligence, defamation or tortious harm.
>
>> . . .
>
>> **b. <u>Time Limitations</u>.**  Any request for arbitration must be served on the other party within the statute of limitations applicable to a particular legal claim.
>
>> **e.** This Agreement is a mandatory term of employment for all employees and must be signed or otherwise agreed to by each Employee in order to be hired or to continue employment after the Effective Date.  By continuing employment after the Effective Date, Employee will be considered to have accepted the terms of this Agreement.

(*Id.* at 2–4).

Lewis argues that: (1) her personnel file does not reflect that she agreed to the "Mutual Agreement to Arbitrate" because the document referred to is titled merely "Arbitration"; (2) the personnel file reflects that all the "Personal Records" were electronically signed on "the exact same date, hour, minute and second"; (3) she never received an electronic copy of, or signed, the Mutual Agreement to Arbitrate; (4) her signature does not appear on the Mutual Agreement to Arbitrate; (5) Circle K sent her, on August 22, 2023, a different version of the Mutual Agreement to Arbitrate than the one it attached as an exhibit to its motion to compel arbitration; (6) Circle K's

5

motion to compel is untimely under the Mutual Agreement to Arbitrate; and (7) the Mutual Agreement to Arbitrate is substantively and procedurally unconscionable. (Docket Entry No. 14 at 1–4).

Lewis attaches the following exhibits to her opposition to the motion to compel: (1) a screenshot of her personnel file, (*id.* at 10); (2) the version of the Mutual Agreement to Arbitrate that Circle K allegedly emailed to Lewis on August 22, 2023, (*id.* at 11); (3) the version of the Mutual Agreement to Arbitrate that Circle K filed as an exhibit to its motion to compel arbitration, (*id.* at 16); and (4) an email Lewis received from the Equal Employment Opportunity Commission telling her that Circle K was notified of the complaints she filed with the agency, (*id.* at 21).

Lewis has failed to point to or submit evidence showing that "the making of an arbitration agreement" is "in issue." *Chester*, 607 F. App'x at 364. Although Lewis "unequivocally denies" having signed any arbitration agreement, Lewis has not pointed to or produced "some evidence" supporting her position. *Id.* at 363–64. Her denial is in the body of her response brief, not in a sworn affidavit. *Compare id.* at 364 (the plaintiff "provided some evidence that he did not sign an arbitration agreement—his affidavit"). The evidence she points to shows only that the "Mutual Agreement to Arbitrate" that Circle K sent her a week before filing its motion may have been different from the "Mutual Agreement to Arbitrate" that it filed as an exhibit to its motion. However, both documents clearly express a mutual agreement to arbitrate; the only difference is that the version Circle K filed has a provision agreeing to mediate before arbitration. (*Compare* Docket Entry No. 12-3 *with* Docket Entry No. 14 at 11–15). It is undisputed that Lewis's personnel file shows her electronically signing or acknowledging eight separate documents simultaneously on November 29, 2021. (Docket Entry No. 12-2 at 14). But Lewis does not explain how, given

6

the nature of electronic as opposed to paper documents, this raises factual disputes material to determining whether she electronically signed the arbitration agreement.

Lewis's argument that Circle K's motion to compel arbitration is untimely under the Mutual Agreement to Arbitrate is unpersuasive. Lewis notes that the Mutual Agreement to Arbitrate provides that a "request for arbitration must be served on the other party within the statute of limitations applicable to a particular legal claim." (Docket Entry No. 14 at 4). Because a plaintiff must sue within 90 days of receiving a "right to sue" letter from the Equal Employment Opportunity Commission, Lewis argues that Circle K was also obligated to request arbitration within that window, or waive it. (*Id.* at 4). Lewis's interpretation of the Mutual Agreement to Arbitrate has the unreasonable effect of allowing a plaintiff to circumvent arbitration by waiting until the day before limitations has run to file suit. The more reasonable interpretation is that, when the claimant is the party requesting arbitration, the request must be made within the limitations period.

Finally, Lewis has not raised a factual dispute as to whether the Mutual Agreement to Arbitrate is substantively or procedurally unconscionable. The basis of Lewis's unconscionability challenge appears to be that: (1) she was not provided a copy of the American Arbitration Association rules; (2) signing the agreement was a condition of her employment; and (3) she had no opportunity to discuss the agreement with an attorney or read and understand the agreement. (*Id.* at 4–5). The evidence shows that Lewis was provided an electronic copy of the Mutual Agreement to Arbitrate, which includes a link to the rules of the American Arbitration Association. (*Id.* at 13; Docket Entry No. 12-3). Texas courts have rejected the argument that it is unconscionable for an employer to condition employment on the signing of an arbitration agreement. *Carter*, 362 F.3d at 301 (citing *Halliburton*, 80 S.W.3d at 572). Finally, Lewis has

7

not produced evidence that she did not have enough time to read and understand the agreement or discuss it with an attorney. Texas law presumes that a party who signs a contract has read and understood it. *In re M.C.*, 412 S.W.3d 48, 53 (Tex. App.—El Paso 2013, pet. denied); *LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 730 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015)).

### III. Conclusion

The motion to compel arbitration, (Docket Entry No. 12), is granted. The case is dismissed without prejudice in favor of arbitration. (Docket Entry No. 12-3).

SIGNED on October 3, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge